FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal No. 2005-76 |
| v. | ) | |
| | ) | |
| GELEAN MARK, VERNON FAGAN, ALLEN DINZEY, ALEXCI EMMANUEL, and LEON BOODOO, | ) ) ) | |
| Defendants. | ) ) | |

**ATTORNEYS:**

**Kim R. Lindquist, AUSA**
St. Thomas, U.S.V.I.
　*For the Plaintiff*,

**Robert L. King, Esq.**
St. Thomas, U.S.V.I.
　*For defendant Gelean Mark*,

**Kevin D'Amour, Esq.**
St. Thomas, U.S.V.I.
　*For defendant Vernon Fagan*,

**Bernard Vansluytman, Esq.**
St. Thomas, U.S.V.I.
　*For defendant Allen Dinzey*,

**Judith L. Bourne, Esq.**
St. Thomas, U.S.V.I.
　*For defendant Alexci Emmanuel*,

**Clive Rivers, Esq.**
St. Thomas, U.S.V.I.
　*For defendant Leon Boodoo.*

**MEMORANDUM OPINION**

**GÓMEZ, C.J.**

On February 20, 2009, defendant Leon Boodoo ("Boodoo") filed a motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29"), or in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33"). In the motion, Boodoo requested an extension of time within which to file his memorandum of law in support of the motion. The Court granted Boodoo's request and ordered Boodoo to file his memorandum of law in support of his Rule 29 and Rule 33 motion no later than Friday, May 8, 2009.

As of the date of this Memorandum Opinion, Boodoo has not filed his memorandum of law in support of his Rule 29 and Rule 33 motion. Nonetheless, the Court will address the assertions stated in the original motion.[1]

---

[1] The motion contains a total of three numbered sentences generally outlining the asserted bases for the motion. With respect to his request for a judgment of acquittal under Rule 29, Boodoo simply states that "[t]he verdict was against the great weight of the evidence." (Mot. 1, ¶ 1, Feb. 20, 2009.) Boodoo was not required to state the grounds of his Rule 29 motion with more specificity than that. *See United States v. Cruz,* 554 F.3d 840, 844 n.4 (9th Cir. 2009) ("Rule 29 motions for acquittal do not need to state the grounds upon which they are based because the very nature of such motions is to question the sufficiency of the evidence to support a conviction." (quotation omitted)); *United States v. Dandy*, 998 F.2d 1344, 1356 (6th Cir. 1993) ("[S]pecificity of grounds is not required in a Rule 29 motion . . . ."); *Huff v. United States,* 273 F.2d 56, 60 (5th Cir. 1959)

## I. FACTS

On December 19, 2006, the grand jury returned a second superseding indictment (the "Indictment") against Boodoo, among other co-defendants. Count One of the Indictment charges Boodoo with conspiracy to possess with intent to distribute cocaine, crack cocaine, and marijuana.

The first trial in this matter commenced on March 5, 2007. On March 27, 2007, the Court declared a mistrial in this matter as to Boodoo. The Court found that manifest necessity required such a declaration, given that the jury was unable to reach a unanimous verdict on Count One.

The re-trial of this matter commenced on February 2, 2009. The parties rested and the matter went to the jury after approximately one week of trial. On February 10, 2009, the jury returned a verdict finding Boodoo guilty of the conspiracies charged in Counts One and Eighteen.

## II. DISCUSSION

### A. Rule 29

---

(holding that under Rule 29, a defendant was not required to specify the grounds in a motion for a judgment of acquittal other than to state that the motion was on the ground the evidence was insufficient to sustain a conviction).

Regarding Boodoo's request for a new trial under Rule 33, Boodoo's motion briefly identifies two specific grounds why he believes that a new trial is warranted.

A judgment of acquittal is appropriate under Rule 29 if, after reviewing the record in a light most favorable to the prosecution, the Court determines that no rational jury could find proof of guilt beyond a reasonable doubt and the verdict is supported by substantial evidence. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006). The government may sustain this burden entirely through circumstantial evidence. *Id.; see also United States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988). "It is not [the Court's] role to weigh the evidence or to determine the credibility of the witnesses." *United States v. Cothran*, 286 F.3d 173, 175 (3d Cir. 2002).

**B.   Rule 33**

When deciding a Rule 33 motion for a new trial, the Court is provided somewhat more discretion than what is afforded under Rule 29. Under Rule 33, the Court may grant a new trial "in the interest of justice." *United States v. Charles*, 949 F. Supp. 365, 368, 35 V.I. 306 (D.V.I. 1996). In assessing such "interest," the court may weigh the evidence and credibility of witnesses. *United States v. Bevans*, 728 F. Supp. 340, 343 (E.D. Pa. 1990), *aff'd,* 914 F.2d 244 (3d Cir. 1990). If the Court determines that there has been a miscarriage of justice, the court may order a new trial. *Id.* The burden is on the defendant to show that a new trial ought to be granted. *United States v. Clovis*, Crim. No.

94-11, 1996 U.S. Dist. LEXIS 20808, at *5 (D.V.I. Feb. 12, 1996).

### III. <u>ANALYSIS</u>

#### A. Sufficiency of the Evidence

Count One charges the Defendants with conspiracy to possess with intent to distribute cocaine, crack cocaine, and marijuana. To sustain its burden of proof on a conspiracy charge, the government must show: "(1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal." *United States v. Pressler,* 256 F.3d 144, 147 (3d Cir. 2001); *see also United States v. Cartwright,* 359 F.3d 281, 286-87 (3d Cir. 2004) (explaining that conspiracy requires a showing that the defendant entered into an agreement and knew that the agreement had the specific unlawful purpose charged in the indictment. (citations and quotations omitted)).

The elements of a conspiracy may be proven entirely by circumstantial evidence, and inferences from established facts may suffice to prove a conspiracy when no direct evidence is available. *See Bobb,* 471 F.3d at 494 (citing *United States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988)); *United States v. Idowu,* 157 F.3d 265, 269 (3d Cir. 1998). However, there must be "a logical and convincing connection between the facts established and the conclusion inferred." *Idowu,* 157 F.3d at 269.

The essence of any conspiracy is the agreement. *Pressler,* 256 F.3d at 147. Since agreements to commit crimes are clandestine by nature, direct evidence of conspiracies is rare. *See id.* A conspiracy may be shown if circumstantial evidence is sufficient to create a "reasonable and logical inference, that the activities of the participants . . . could not have been carried on except as the result of a preconceived scheme or common understanding." *United States v. Kapp,* 781 F.2d 1008, 1010 (3d Cir. 1986). For example, there may be sufficient circumstantial evidence for a rational jury to find a conspiracy where the alleged co-conspirators: demonstrated a level of mutual trust, referred business to one another in exchange for discounts, frequently met to exchange large sums of money, consulted each other about drug prices, conducted their business in code, stood on lookout for each other, provided protection to one another, shared packaging materials, shared profits, or acted as debtor or creditor to one another. *See, Pressler,* 256 F.3d at 153-54; *United States v. Gibbs*, 190 F.3d 188, 200-02 (3d Cir. 1999); *United States v. Powell,* 113 F.3d 464, 467 (3d Cir. 1997); *United States v. McGlory,* 968 F.2d 309, 322-28 (3d Cir. 1992).

Viewing the evidence in the light most favorable to the government, the Court must determine whether any rational jury could find that the elements of a conspiracy have been satisfied

with respect to Boodoo and the conspiracy charged in Count One.

The evidence at trial included several intercepted telephone calls involving Boodoo. On April 28, 2005, an individual named Ramón Sanchez ("Sanchez") called alleged coconspirator Allen Dinzey ("Dinzey"). Dinzey told Sanchez to deal with Boodoo:

>DINZEY: Hello.
>
>SANCHEZ: Yeah I'm here.
>
>DINZEY: Hey Leon ain't down deh.
>
>SANCHEZ: Who[?]
>
>DINZEY: Leon the tall guy Budu.
>
>SANCHEZ: Yeah yeah.
>
>DINZEY: Yeah okay deal with him.
>
>SANCHEZ: Okay will do.
>
>DINZEY: He got it just, just deal with him.

(Ex. No. 39, 4:06 p.m., April 28, 2005.)

On May 25, 2005, Boodoo called Dinzey, and gave the phone to an individual named Tai Vu ("Vu"):

>BOODOO: (Background conversation and music[;] "He coming?" "Yea, I calling him."
>
>DINZEY: Hello.
>
>BOODOO: Mow
>
>DINZEY: Yeah.
>
>BOODOO: (talks to person in the background) Hey Ching, hold on.

>VU: Hey Mowie.
>
>DINZEY: Yeah.
>
>VU: I'm here man.
>
>DINZEY: I coming down right now.

(Ex. No. 84, 5:02 p.m., May 25, 2005.)

In another conversation, Boodoo called Dinzey and was talking with two unidentified men in the background:

>BOODOO: (talks to someone in the background) Yea. Ask the guy how much.
>
>>UNIDENTIFIED MAN #1: A fucking eight ball.
>
>BOODOO: Eight ball? Seventy-five.
>
>>UNIDENTIFIED MAN #2: Seventy-five.
>
>BOODOO: Hello.
>
>DINZEY: Hello.
>
>>. . .
>
>BOODOO: A, ahm, you ain't got no eight ball. Hard.
>
>DINZEY: Who this is?
>
>BOODOO: This Boodoo Man
>
>>. . .
>
>BOODOO: How much you want it for?
>
>DINZEY: If what?
>
>BOODOO: A eight. Hard.
>
>DINZEY: Yeah.

> BOODOO: (Boodoo speaking with persons in background) Hey he want seventy-five my boy.
>
> DINZEY: Ah?
>
> BOODOO: (Boodoo speaking with persons in background)
> Seventy-five. He want seventy . . . wait hold on. Seventy-five. Yeah. Just give me the money.
>
> BOODOO: (speaks to Dinzey) Hey, just get me a eight ball okay. I coming up now.

(Ex. No. 88, 5:35 p.m., May 27, 2005.)

Three days later, Boodoo called Dinzey, and again gave the phone to Vu:

> DINZEY: Hello.
>
> . . .
>
> BOODOO: Wait, hold on, hold on.
>
> VU: It's me man.
>
> DINZEY: Yea.
>
> . . .
>
> DINZEY: What you want?
>
> VU: A want twenty.
>
> DINZEY: Send someone up for it man. I busy right now I can't come out my house.
>
> VU: Oh, okay I, I'll come to your house then. Okay.
>
> DINZEY: Yea.
>
> VU: Louie come with me.
>
> BOODOO: Yea yea.

(Ex. No. 94, 6:36 p.m., May 30, 2005.)

In addition to the wiretap evidence, the government introduced two video recordings capturing Boodoo engaging in hand-to-hand drug transactions on the streets of Savan.

The circumstantial evidence implicating Boodoo could support the logical inference that he agreed to pool his efforts with others toward the common goal of distributing drugs. The fact that Dinzey directed Sanchez to deal with Boodoo suggests that Boodoo and Dinzey had some prior understanding about dealing drugs. An overwhelming amount of evidence was presented at trial showing that Dinzey's role in the conspiracy alleged in Count One was as a drug dealer, who conspired with other drug dealers to distribute drugs. For example, Boodoo contacted Dinzey numerous times in the intercepted telephone conversations to arrange drug deals. On several occasions, the term "hard" was used. The Government presented the testimony of David Long ("Long"), a purchaser of crack cocaine, who testified at trial that "hard" meant crack cocaine. During these intercepted conversations, Dinzey identified Boodoo by name. Indeed, Boodoo even identified himself by name in at least one conversation with Dinzey.

The wiretap evidence could reasonably be interpreted as showing that Boodoo facilitated at least three drug transactions between Dinzey and others, including Vu. Additionally, Vu

admitted during the trial that he had purchased drugs on the streets of St. Thomas on a number of occasions from Dinzey. The evidence adduced at trial demonstrates coordination between Boodoo and Dinzey in connection with the sale of drugs to Vu.

Based on the foregoing, the Court finds that a rational jury believing the government's evidence could find that Boodoo agreed to work on behalf of Dinzey to possess with intent to distribute drugs on the streets of St. Thomas. *See, e.g., Gibbs,* 190 F.3d at (noting that "[the defendant]'s repeated purchases from [the mid-level dealer] advanced the conspiracy's goals, since it was only through distributors like [the defendant] that [the mid-level dealer] was able to unload the cocaine he had received from his supplier").

Accordingly, the Court will deny Boodoo's motion for judgment of acquittal.

**B.   New Trial**

Boodoo's motion for a new trial asserts that "[t]he Court abused its discretion when it refused to individually poll each jury with respect to the verdict." (Mot. 1, ¶ 2, Feb. 20, 2009.) However, the record reveals that the Court did individually poll the jury as to their verdict of guilty as to Boodoo.

Finally, Boodoo's motion states that "[t]he Government's remarks at closing were so prejudicial, the Defendant was denied

a fair trial." (*Id.* at ¶ 3.)  However, the motion does not point to what remarks Boodoo views as overly prejudicial.  In fact, the motion does not contain any argument or analysis of any kind in support of its assertion.  Furthermore, the Government's closing argument at trial did not only pertain to Boodoo, but also to his five other co-defendants.  In sum, Boodoo has failed to meet his burden to show that the interests of justice require a new trial.

### IV. CONCLUSION

For the reasons given above, the Court will deny Boodoo's motions for a judgment of acquittal and for a new trial.  An appropriate Order follows.

S_____
      **CURTIS V. GÓMEZ**
      **Chief Judge**